**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DELROY A. CHAMBERS, JR.,

    Plaintiff,

v.

MCPEAK REALTY GROUP, INC. and
THE HAMPTONS AT BRANDON CONDOMINIUM
ASSOCIATION, INC.,

    Defendants.

_____/

**COMPLAINT**
**and**
**JURY DEMAND**

    Plaintiff, Delroy A. Chambers, Jr., by and through his undersigned attorneys, files this Complaint for injunctive and declaratory relief, damages, costs, and attorneys' fees against Defendants, McPeak Realty Group, Inc. and The Hamptons at Brandon Condominium Association, Inc., and as good grounds states as follows:

**PRELIMINARY STATEMENT**

    1.    This action arises as a result of Defendants' discriminatory actions perpetrated against Black people with respect to the rental of a home in Brandon, Florida (the "Dwelling").

    2.    Specifically, Defendants have violated the Fair Housing Act by, among other things, refusing to negotiate and otherwise making unavailable and denying the Dwelling to Mr. Chambers because of race.

**JURISDICTION AND VENUE**

    3.    Jurisdiction is invoked pursuant to 42 U.S.C. § 3613(a), in that Plaintiff asserts his claims of housing discrimination in a civil action, and also pursuant to 28 U.S.C. §§ 1331, 2201

and 1343(a)(4), in that this is a civil action seeking to redress the deprivation of the right to fair housing secured to Plaintiff by the Fair Housing Act.

4. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Plaintiff seeks permanent injunctive relief pursuant to Rule 65, Federal Rules of Civil Procedure.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) in that the subject property is located in this district, the events and/or omissions giving rise to the claims herein occurred in this district, and the Defendants' principal places of business are in this district.

## PARTIES

6. Plaintiff, Delroy A. Chambers, Jr., is a Black male that serves as a fair housing tester who seeks to enforce fair housing laws so that people are protected from discriminatory housing practices. Mr. Chambers attempts to accomplish these goals by engaging in testing for fair housing violations and pursuing enforcement of meritorious claims, among other things. In this capacity, Mr. Chambers poses as a renter or purchaser for the purpose of collecting evidence of discriminatory housing practices, without intent to rent or purchase a home. At all relevant times, Mr. Chambers was acting in this capacity as a tester when he conducted an investigation into the discriminatory actions perpetuated by Defendants.

7. As a fair housing tester and advocate dedicated to advancing the rights of those historically discriminated against, Mr. Chambers attempts to locate housing providers and advertisers in order to test their compliance with various fair housing laws. Mr. Chambers conducts such testing efforts consistent with the guidance and instructions outlined by the U.S. Department of Housing and Urban Development (HUD), housing advocacy groups, and established case law.

8. Mr. Chambers is deeply committed to fair housing and the goals of the Fair Housing Act. Mr. Chambers was and continues to be adversely affected by the acts, omissions, policies, and practices of the Defendants.

9. Defendant, McPeak Realty Group, Inc., is a Florida Profit Corporation that is engaged in the business of real estate and is comprised of licensed real estate professionals.

10. Defendant, The Hamptons at Brandon Condominium Association, Inc., is a Florida Not For Profit Corporation that promulgates and enforces the rules that the Dwelling is subject to.

## FACTUAL ALLEGATIONS

11. While investigating discrimination in the housing market in January, 2020, Mr. Chambers encountered an advertisement for the Dwelling. The advertisement stated, among other things, "Must not have any criminal background."

12. As part of Mr. Chambers's fair housing testing efforts described above, Mr. Chambers, posing as a potential renter, attempted to negotiate for the rental of the Dwelling with Defendant, McPeak Realty Group, Inc. by confirming the availability of the Dwelling.

13. Defendant, McPeak Realty Group, Inc. then asked Mr. Chambers various qualification questions, including, but not limited to whether Mr. Chambers has a criminal background.

14. Having confirmed that the Dwelling was available for rental, Mr. Chambers continued the test by answering the various questions asked by Defendant, McPeak Realty Group, Inc. and by asking for additional details regarding the no criminal background policy referenced in the advertisement. Specifically, Mr. Chambers asked whether a criminal background will result in a denial of the Dwelling.

15. Despite the blanket prohibition noted in the advertisement, Defendant, McPeak Realty Group, Inc. asked for additional details regarding Mr. Chambers's criminal background.

16. In response, Mr. Chambers's responded with details regarding his 2013 felony arrest.

17. In response, Defendant did not ask whether the arrest resulted in convictions, and instead, simply stated that it would result in an automatic denial of the Dwelling by the association, thereby ceasing negotiations with Mr. Chambers.

18. These actions are unlawful under the Fair Housing Act, because Defendant, McPeak Realty Group, Inc. ceased negotiating and otherwise made unavailable and denied the Dwelling to Mr. Chambers because of his arrest history.

19. Mr. Chambers then continued his investigation by contacting Defendant, The Hamptons at Brandon Condominium Association, Inc. to inquire about its criminal background policy.

20. During the course of his investigation, Mr. Chambers reviewed the published criminal history policy of Defendant, The Hamptons at Brandon Condominium Association, Inc., which states: "The Association does require that all residents whether owning or renting go through a criminal background screening, our criteria is as follows: No Felonies in the past 7 years, No more than 3 Misdemeanors in 3 years, and a Zero tolerance for any violent crimes or sexual offenses."

21. This policy is unlawful as it fails to distinguish between arrests and convictions, and includes blanket prohibitions on any person with any felony conviction record within the past seven years and for those with more than three misdemeanors in three years – no matter what the underlying conduct entailed, or what the convicted person has done since then.

22. Mr. Chambers informed Defendant, The Hamptons at Brandon Condominium Association, Inc. that he was interested in renting the Dwelling and asked if it had a criminal background policy, and for information about it, if there was such a policy.

23. Defendant, The Hamptons at Brandon Condominium Association, Inc. responded by confirming the aforementioned published policy of Defendant, The Hamptons at Brandon Condominium Association, Inc.  Mr. Chambers then asked for additional details, and Defendant, The Hamptons at Brandon Condominium Association, Inc. responded by stating that its background screens are conducted by a third-party vendor, thereby otherwise making the unavailable and denying the Dwelling to Mr. Chambers, because of the criminal history policy.

24. Such actions and statements serve to discourage Mr. Chambers from applying, inspecting and renting the Dwelling; and restrict the choices of Mr. Chambers by word or conduct in connection with seeking, negotiating for, renting the Dwelling so as to perpetuate, or tend to perpetuate, segregated housing patterns, or to discourage or obstruct choices in a community, neighborhood or development.  As such, these actions constitute efforts to deprive Mr. Chambers of housing opportunities.

25. These statements clearly indicate that the rental of the Dwelling is subject to an unlawful criminal history policy that takes arrests into consideration and includes a blanket prohibition, which is unlawful under the Fair Housing Act, as it has a disparate impact on Black people, and fails to serve a substantial, legitimate, nondiscriminatory interest of the housing provider.

26. HUD has found that "where a policy or practice that restricts access to housing on the basis of criminal history has a disparate impact on individuals of a particular race … such policy or practice is unlawful under the Fair Housing Act if it is not necessary to serve a substantial,

legitimate, nondiscriminatory interest of the housing provider." *See* HUD, "Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions" (April 4, 2016).

27. According to recent data, studies and HUD findings, Black people are arrested, charged, convicted, and imprisoned at vastly disproportionate rates in Florida and the country as a whole. As such, Defendants' policy actually and predictably result in a disparate impact to Black people.

28. HUD has found that "[a] housing provider with a policy or practice of excluding individuals because of one or more prior arrests (without any conviction) cannot satisfy its burden of showing that such policy or practice is necessary to achieve a substantial, legitimate, nondiscriminatory interest." *Id.*

29. HUD has further found that no substantial, legitimate, nondiscriminatory interest can be served where "[a] housing provider … imposes a blanket prohibition on any person with any conviction record – no matter … what the underlying conduct entailed, or what the convicted person has done since then." *Id.*

30. As such, Defendants' actions in refusing to negotiate with Mr. Chambers and making the Dwelling unavailable to Mr. Chambers and denying it to him based on a criminal history policy that takes an applicant's arrest history into consideration and includes a blanket prohibition is unlawful under the Fair Housing Act, as it has a disparate impact on Black people, and fails to serve a substantial, legitimate, nondiscriminatory interest of the housing provider.

31. Mr. Chambers was angered and insulted that Defendants were refusing to negotiate and making the Dwelling unavailable to him and denying it to him based on a criminal history

policy, which takes an applicant's arrest history into consideration and includes a blanket prohibition.

32. As a Black person who has been the subject of discrimination throughout his life, Mr. Chambers is particularly sensitive to discriminatory practices. As such, Mr. Chambers was insulted and emotionally distressed by being subjected to discriminatory housing policies by Defendants.

33. Mr. Chambers was and is saddened, angered, and insulted by the fact that the Defendants refused to negotiate and otherwise made unavailable and denied the Dwelling to him based on a criminal history policy that has a discriminatory impact and serves no substantial, legitimate, nondiscriminatory interest. Mr. Chambers has spent a significant amount of time thinking about what occurred and all the other Black people who may have had housing made unavailable to them by Defendants based on the criminal history policy that takes arrest history into consideration and includes a blanket prohibition, and while doing so, has felt the aforementioned emotions.

34. Defendants' unlawful conduct proximately caused Mr. Chambers to suffer the aforementioned emotions, which have manifested into stress, unpleasant rumination, mental strain, and feelings of indignity, hopelessness and anxiety about race discrimination in housing.

35. Consistent with his fair housing testing efforts, Mr. Chambers has a practice of continuing to monitor and test those entities and individuals found to have been discriminating. To those ends, Mr. Chambers has and will continue monitoring Defendants and their agents in order to determine their ongoing compliance with the Fair Housing Act, and will continue to do so throughout the pendency of this matter and after its conclusion.

## COUNT 1:
## VIOLATION OF THE FAIR HOUSING ACT

36. Plaintiff repeats and realleges paragraphs 1 through 35 as if fully set forth herein.

37. This Count 1 is brought by Plaintiff against the Defendants.

38. Defendants are liable to Plaintiff for all injuries caused by the Fair Housing Act violations committed by Defendants, and their agents.

39. Defendants authorized their agents to act for it when they committed the Fair Housing Act violations alleged herein. Defendants' agents accepted the undertaking of acting on behalf of Defendants when they committed the Fair Housing Act violations alleged herein. Defendants had control over their agents when they committed the Fair Housing Act violations alleged herein.

40. Defendants have violated the Fair Housing Act by, among other things, otherwise making unavailable and denying the Dwelling to Mr. Chambers because of race.

41. A discriminatory purpose, not any legitimate reason, was a motivating factor behind Defendants' aforementioned discriminatory actions and/or omissions.

42. As a result of Defendants' discriminatory conduct - committed despite being engaged in the business of real estate, coupled with Plaintiff's ongoing monitoring efforts - Plaintiff has suffered, is continuing to suffer, and will in the future suffer irreparable loss and injury and a real and immediate threat of future discrimination by Defendants.

43. Defendants' unlawful conduct and actions constitute direct evidence of discrimination and proximately caused Plaintiff's damages as described above.

44. In engaging in this unlawful conduct described above, Defendants acted recklessly or intentionally. This is evidenced, in part, by the fact that Defendants are engaged in the real

estate business and property management, and despite that fact, chose to engage in unlawful discrimination.

45. As a tester who has been treated in a discriminatory fashion by Defendants, Mr. Chambers has suffered an injury in precisely the form the Fair Housing Act was intended to guard against, and therefore he has standing to maintain his claims under the Act's provisions.

46. Accordingly, Plaintiff is aggrieved by Defendants' discriminatory actions in violation of the Fair Housing Act.

WHEREFORE, Plaintiff respectfully requests that the Court:

A. declare the actions, omissions, policies, and procedures of Defendants, complained of herein to be in violation of the Fair Housing Act;

B. enter a permanent injunction enjoining Defendants, their successors, and their servants, agents and employees, and all those acting in concert with them, from engaging in discrimination based on race;

C. enter a permanent injunction compelling Defendants, their successors, and their servants, agents and employees, and all those acting in concert with them, to amend any and all policies, procedures and practices, which discriminate against persons based on race;

D. award compensatory damages to Plaintiff against Defendants, to compensate Plaintiff for, among other things, the emotional distress, anger, insult and injury caused by Defendants' discriminatory actions;

E. award Plaintiff his costs and reasonable attorneys' fees in this action; and

F. award Plaintiff such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable in this matter.

Respectfully submitted,

Joshua A. Glickman, Esq.
Florida Bar No. 43994
josh@sjlawcollective.com
Shawn A. Heller, Esq.
Florida Bar No. 46346
shawn@sjlawcollective.com

Social Justice Law Collective, PL
974 Howard Avenue
Dunedin, Florida 34698
(202) 709-5744
(866) 893-0416 (Fax)

Attorneys for the Plaintiff

By:  *s/ Shawn A. Heller*
        Shawn A. Heller, Esq.